IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EVERETT SHELTON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action File No. 2:21-cv-03045-JMY |
| v. | FIRST AMENDED CLASS ACTION COMPLAINT |
| LUMICO LIFE INSURANCE COMPANY, and ASSURANCE IQ, INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

**NATURE OF ACTION**

1.      This case involves a telemarketing campaign by Assurance IQ, Inc. ("Assurance") and Lumico Life Insurance Company ("Lumico") to market their services in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2.      In violation of the TCPA, Assurance initiated a pre-recorded telemarketing call to the Plaintiff. The pre-recorded call was sent to promote Lumico goods and services.

3.      The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of proposed nationwide classes of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4.      A class action is the best means of obtaining redress for the Defendants' wide

scale illegal telemarketing and is consistent both with the private right of action afforded by the

TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

<u>**JURISDICTION AND VENUE**</u>

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47

U.S.C. § 227 *et seq*.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the

events or omissions giving rise to the claim occurred in this district, as the call at issue was

received by the Plaintiff in this District.

<u>**PARTIES**</u>

7.      Plaintiff James Everett Shelton is and at all times mentioned herein was, an

individual who resides in Pennsylvania.

8.      Defendant Lumico Life Insurance Company is a Missouri corporation with its

principal place of business at 175 King Street, Armonk, NY 10504.

9.      Defendant Assurance IQ, Inc. is a Washington corporation with its principal place

of business in Bellevue, Washington.

<u>**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
(TCPA), 47 U.S.C. § 227**</u>

<u>The TCPA Prohibits Prerecorded Telemarketing Calls</u>

10.      The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

12.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The TCPA Requires Telemarketers to Identify Themselves</u>

15.     The TCPA's implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented certain internal.  47 C.F.R. 64.1200(d)(1)-(6).

16.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted."  47 C.F.R. 64.1200(d)(4).

17.     These requirements apply to calls made to wireless telephone numbers.  47 C.F.R. 64.1200(e).

<u>The Growing Problem of Automated Telemarketing</u>

18.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

19.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-

consumer-protection-federal-communications-commission-

rulesregulations/160616robocallscomment.pdf.

20.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls,

compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National*

*Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-

events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

21.     *The New York Times* recently reported on the skyrocketing number of robocall

complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's*

*Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),

https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine

Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-

can-do-about-them-1530610203.

22.     Even more recently, a technology provider combating robocalls warned that

nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion,

*Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019* (Sept. 12, 2018),

https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-

by-2019-300711028.html

## FACTUAL ALLEGATIONS

23.     Lumico is an insurance company offering a series of insurance products including

life insurance.

24.     To generate new customers, Lumico relies on telemarketing.

25.     Lumico's telemarketing is done directly and through reliance on third party vendor relationships, like the one it maintains with Assurance.

26.     One of Defendants' strategies for telemarketing involves the use of prerecorded voice calls to solicit business and having its vendors use the same.

27.     Coupled with this technology, Lumico and the vendors employ the use of pre-recorded messages, which require the consumer to affirmatively respond to an automated message before they can speak with a live person.

28.     Assurance also uses automated text messages to promote their goods and services.

29.     Defendants use these technologies because they allow Defendants to deliver thousands of telemarketing messages in a short period of time, but its sales representatives only talk to individuals who affirmatively respond.

30.     Through this method, Defendants shift the burden of wasted time to the consumers it calls with unsolicited messages.

**Calls to Mr. Shelton**

31.     Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

32.     The Plaintiff's telephone number, (484) 626-XXXX, is registered to a wireless, cellular telephone service.

33.     The Plaintiff's telephone number is his residential telephone number, and is listed on the National Do Not Call Registry.

34.     On May 11, 2019, the Plaintiff received a call from Assurance IQ, which used a prerecorded voice to deliver a telemarketing message.

35.     When Plaintiff answered the call, there was a lengthy pause and a click followed by silence before the recorded message was played.

36.     The Caller ID number for the call was (484) 461-5277.

37.     This Caller ID number was "spoofed," as that number is not in service.

38.     In other words, the Defendant manipulated the dialing system to use a Caller ID number that was local to the Plaintiff in hopes that he would answer.

39.     The prerecorded message was a generic message regarding insurance services.

40.     The pre-recorded message did not identify the party that was calling or the party on behalf the call was made, so to investigate the call, the Plaintiff "pressed one" and spoke with a live representative

41.     During the call, Plaintiff learned that the purpose of the call was to sell Lumico's insurance services.

42.     Confirming that fact, the Defendants sent the Plaintiff an e-mail regarding their insurance services.

43.     The e-mail came from "no_reply@lumico.com ".

44.     During the call, Plaintiff informed the caller that he did not want the services offered and he intended to proceed with an action for them calling his cell phone number without his consent.

45.     Despite this statement, Assurance sent Mr. Shelton automated text messages following the call.

46.     Those text messages are below:



47.   The text messages were sent with a "Short Code".

48.   The Short Code for these texts were 719-53.

49.   The Defendants did not have the Plaintiff's prior express written consent to telemarket to his cell phone.

50.   Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, their time was wasted with unsolicited communications, and their privacy was improperly invaded.

51.   Moreover, these calls injured the Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of the Plaintiff and the classes.

## LUMICO'S LIABILITY FOR ASSURANCE'S CONDUCT

52. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

53. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

54. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Lumico may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

55. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information

regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

56.     Lumico knowingly and actively accepted business that originated through the illegal telemarketing calls from Assurance.

57.     By hiring a company to make calls on its behalf, Lumico "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

58.     Moreover, Lumico maintained interim control over the actions of Assurance.

59.     For example, Lumico had absolute control over whether, and under what circumstances, it would accept a customer from Assurance.

60.     Furthermore, Lumico could limit the types of insurance products Assurance could offer to customers, and did so when Lumico required Assurance to offer life insurance services to Mr. Shelton.

61.     Lumico also allowed Assurance access to its proprietary systems as Assurance was able to issue a quote to Mr. Shelton that was sent from a Lumico e-mail address, as explained above.

62.     Lumico has previously been involved in TCPA litigation because of Assurance's unlawful telemarketing activities.

63.     However, Lumico continued its relationship with Assurance.

64.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).


**CLASS ACTION ALLEGATIONS**

65.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

66.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Classes") pursuant to Federal Rule of Civil Procedure 23(b)(3).

67.     Plaintiff proposes the following three Class definitions, subject to amendment as appropriate:

**Class One – Prerecorded Telemarketing Call Class**

All persons within the United States to whom: (a) Defendants or a third party acting on their behalf made one or more prerecorded insurance telemarketing calls; (b) to a cellular or residential telephone number; (c) within the four years before the date of the filing of this Complaint (d) where Assurance obtained the call recipient's phone number in the same or a similar way that it obtained the Plaintiff's.

**Class Two – Failure to Identify Class**

All natural persons within the United States to whom: (a) Assurance and/or a third party acting on their behalf, made two or more insurance telemarketing calls or text messages in a twelve-month period (b) to a cellular or residential telephone number; (c) that did not identify the name of the company that was calling, or the name of the company on behalf the call was made; (d) within the four years before the date of the filing of this Complaint to trial (e) where Assurance obtained the call recipient's phone number in the same or a similar way that it obtained the Plaintiff's.

68.     Excluded from the Classes are Defendants and any entities in which Defendants has a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

69.     The classes defined above are identifiable through phone records and phone number databases and Defendant's internal records.

70.     The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

71.     Plaintiff is a member of the proposed Classes.

72.     There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

- Whether Defendants placed calls using a pre-recorded message;

- Whether Lumico is vicariously liable for telemarketing calls made on its behalf;

- Whether Defendants placed calls without obtaining the recipients' prior express written consent for the call;

- Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions;

- Whether the actions of the Defendants were knowing or willful.

- 12 -

73.     Plaintiff's claims are typical of the claims of members of the Classes. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

74.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

75.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

76.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.

77.     Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

78.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

79.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## CAUSES OF ACTION

## FIRST COUNT

## IDENTIFICATION VIOLATIONS (INCLUDING BUT NOT LIMITED TO KNOWING AND/OR WILLFUL VIOLATIONS) OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 AGAINST ASSURANCE

80.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

81.     The foregoing acts and omissions of Assurance constitute violations of the FCC's regulations implementing subsection 227(c) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of such person or entity.  47 C.F.R. 64.1200(d); 47 C.F.R. 64.1200(e)

82.     Defendants failed to identify themselves in the prerecorded message and in the automated text message sent to the Plaintiff and the putative classes.

83.     The Defendant's violations were willful and/or knowing.

## SECOND COUNT

## PRERECORDED OR ARTIFICIAL VOICE VIOLATIONS (INCLUDING BUT NOT LIMITED TO KNOWING AND/OR WILLFUL VIOLATIONS) OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 AGAINST BOTH DEFENDANTS

84.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

85.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, concerning calls made through use of a "artificial or

prerecorded voice," including but not limited to 47 U.S.C. §§ 227(b)(1)(A)(iii) & (b)(1)(B); 47 C.F.R. §§ 64.1200(a)(1)(iii) & 64.1200(a)(2) & 64.1200(a)(3)

86.     As a result of the Defendants' violations, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, or up to $1,500 in statutory damages for each willfully or knowingly made violation, pursuant to 47 U.S.C. § 227(b)(3).

87.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendants from engaging in the use of pre-recorded messages in their telemarketing calls.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.     Injunctive relief prohibiting Defendants from engaging in the use of pre-recorded messages in their telemarketing calls, and from placing telemarketing calls without identifying themselves;

B.     As a result of Defendants' statutory violations of 47 U.S.C. § 227(b), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every violation of the TCPA;

C.     As a result of Defendants' statutory violations of 47 U.S.C. § 227(c), Plaintiff seeks for themselves and each Class member $500 in statutory damages for each and every violation of the TCPA;

D.      As a result of the Defendants' willful and/or knowing violations of the TCPA, Plaintiff seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

E.      An award of attorneys' fees and costs to counsel for Plaintiff and the Classes as permitted by law;

F.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Classes as the Court deems appropriate, finding that Plaintiff are a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

G.      Such other relief as the Court deems just and proper.

Respectfully Submitted,

PLAINTIFF, individually and
on behalf of others similarly situated,

By:


*/s/ Timothy J. Sostrin*
Timothy J. Sostrin
Keith J. Keogh
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
[o] (312)_726-1092
[f] (312) 726-1093
tsostrin@keoghlaw.com
keith@keoghlaw.com

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400

Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com