UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EVERETT SHELTON, | : |
| Plaintiff, | : Case No. 2:21-cv-03045-JMY |
| v. | : |
| LUMICO LIFE INSURANCE CO., and ASSURANCE IQ, LLC, | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF ASSURANCE IQ, LLC'S MOTION TO STAY BASED ON PRIMARY JURISDICTION**

**I.   INTRODUCTION**

The Federal Communications Commission ("FCC") is currently considering two critical issues—commenced at the behest of Assurance IQ, LLC ("Assurance")[1] via a Petition for Expedited Declaratory Ruling—that are likely to prove dispositive of this litigation. Indeed, the FCC issued a Public Notice regarding Assurance's Petition on May 21, 2020, and the Petition is now fully briefed and ripe for a determination by the agency. Pursuant to the Primary Jurisdiction Doctrine—and in accordance with basic Separation of Powers principles—Assurance respectfully asks this Court to stay this action until the FCC has completed its important work on its pending Public Notice proceeding.

---

[1] Since the filing of the Complaint, the company's name changed from Assurance IQ, Inc. to Assurance IQ, LLC.

The first issue before the Commission is whether Assurance may "reasonably rely" on the consent provided by an individual visiting its website and purporting to be Plaintiff James Everett Shelton ("Shelton" or "Plaintiff").

The fact scenario Plaintiff alleges here cries out for a clarification from the FCC—the agency authorized by Congress to implement and interpret the TCPA. Plaintiff argues that Assurance is *per se* liable for calling him without consent (assuming, in fact, there was no consent, which Assurance disputes), but the FCC has previously adopted a "reasonable reliance" standard for assessing express consent under the TCPA. There is good reason to believe, therefore, that the Commission might grant the relief sought by Assurance's petition and clarify that it may make calls in "reasonable reliance" on the seemingly valid consent at issue in this case.

The second issue before the Commission is whether, as Shelton alleges, the brief "guide" message played at the outset of the live calls at issue in this case constituted the use of a "prerecorded voice" for purposes of 47 USC § 227(d) and 47 C.F.R. § 64.1200(d)(4). Although Plaintiff definitively lacks a private right of action to pursue such a claim,[2] the Court need not wrestle with the policy considerations underlying the scope of the TCPA's pre-recorded call components as the issue is before the FCC, which can issue definitive guidance. Where, as here, a federal court ruling might conflict with a determination by a federal agency regarding the meaning of a

---

[2] 47 U.S.C. §227(d) lacks a private right of action and 47 C.F.R. § 64.1200(d)(4) pertains to content requirements that were implemented by the FCC under § 227(d). *See Burdge v. Ass'n Health Care Mgmt.*, No. 10-0100, 2011 U.S. Dist. LEXIS 9879, at *8–10 (S.D. Ohio Feb. 2, 2011) (holding that § 64.1200(d)(4) was enacted pursuant to 47 U.S.C. § 227(d)).

federal statute the agency is charged with interpreting, the Primary Jurisdiction doctrine—and Separation of Powers jurisprudence—strongly counsels for a stay of litigation proceedings. Thus, because the FCC is set to act on two issues that are central to this case, Assurance respectfully requests the Court stay this matter pending the FCC's resolution of each issue.

## II.   RELEVANT PROCEDURAL BACKGROUND

### A.   Plaintiff's First Amended Complaint

Plaintiff alleges that Assurance violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by placing calls that include a prerecorded message 1) without consent and 2) without identifying the caller.[3] Plaintiff seeks to certify the following two nationwide classes based on these purported violations:

> **Class One — Prerecorded Telemarketing Call Class**
> All persons within the United States to whom: (a) Defendants or a third party acting on their behalf made one or more prerecorded insurance telemarketing calls; (b) to a cellular or residential telephone number; (c) within the four years before the date of the filing of this Complaint; (d) where Assurance obtained the call recipient's phone number in the same or similar way that it obtained the Plaintiff's.
>
> **Class Two — Failure to Identify Class**
> All natural persons within the United States to whom: (a) Assurance and/or a third party acting on their behalf, made two or more insurance telemarketing calls or text messages in a twelve-month period; (b) to a cellular or residential telephone number; (c) that did not identify the name of the company that was calling, or the name of the company on behalf the call was made; (d) within the four years before the date of the filing of this Complaint to trial; (e) where Assurance obtained the call

---

[3] Plaintiff originally included an "automated text messaging" class in the Complaint [ECF No. 1], but he voluntarily dismissed this claim when he agreed to file and filed the First Amended Complaint [ECF No. 45-1].

recipient's phone number in the same or a similar way that it obtained the Plaintiff's.[4]

The first class relates to prerecorded messages for which Assurance allegedly lacked consent to place the call. The second class—and related claim—relates to Assurance's alleged failure to identify itself during the brief, 8–10 second introductory message that plays during the beginning of each call.

### B. Assurance's FCC Petition

On May 12, 2020, Assurance filed the Petition with the FCC, raising two issues: 1) whether it can reasonably rely on consent information provided on its website so long as it contains sufficient information to identify the individual providing consent; and 2) whether its live-agent calls that include a brief, eight-to-ten second introductory message are subject to the identification requirements of 47 C.F.R. § 64.1200(d)(4).[5] On May 21, 2020, the FCC took action on the Petition and issued a Public Notice seeking comment on both issues.[6] The Comment Period on the Public Notice expired on July 6, 2020.[7]

---

[4] Am. Compl. ¶ 67.

[5] *See In the Matter of Assurance IQ, LLC's Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278 (May 12, 2020), *available at* https://ecfsapi.fcc.gov/file/10512089842790/ASSURANCE%20IQ%2C%20LLC%20FCC%20PETITION.pdf.

[6] *See* Pub. Notice, DA 20-540, CG Docket No. 02-278 (May 21, 2020), *available at* https://docs.fcc.gov/public/attachments/DA-20-540A1.pdf.

[7] *Id.*

Among the numerous commenters was Plaintiff.[8] Indeed, one of Plaintiff's counsel of record in this case, Timothy Sostrin of Keogh Law, attended an ex parte meeting with the FCC on August 11, 2020 to discuss Plaintiff's response to the petition.[9] Further, Assurance held two ex parte meetings with the FCC, most recently on April 21, 2021.[10] The issues raised by Plaintiff in this Action are currently before the Commission on Assurance's Petition and, therefore, Assurance respectfully submits that this Action should be stayed, pending a ruling from the Commission.

## III.  ARGUMENT

### A. The Case Should be Stayed Pursuant to the Primary Jurisdiction Doctrine Because the FCC is Weighing Issues Central to this Litigation.

When an agency is considering an issue within its scope and expertise, a court should stay resolution of the issue and defer to the agency's subsequent ruling pursuant to the primary jurisdiction doctrine. *See Ellis v. Tribune TV Co.*, 443 F.3d 71, 81–82 (2d Cir. 2006). The doctrine applies "to claims properly cognizable in court that contain some issue within the special competence of an administrative agency."

---

[8] *See* Comments of James Shelton in Opp. to Pet. for Expedited Declaratory Ruling filed by Assurance IQ, LLC, CG Docket No. 02-278 (June 22, 2020), *available at* https://ecfsapi.fcc.gov/file/10622624728686/98973.PDF.

[9] *See* Notice of *Ex Parte* Presentation, CG Docket No. 02-278, Petition of Assurance IQ, LLC (Aug. 12, 2020), *available at* https://www.nclc.org/images/pdf/robocalls/FCC-letter-Ex-Parte.pdf; Notice of Written Ex Parte Presentation, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278 (Aug. 12, 2020), *available at* https://www.nclc.org/images/pdf/robocalls/FCC-letter-Ex-Parte.pdf.

[10] *See* Notice Of Ex Parte Presentation - Assurance IQ, LLC – Petition For Expedited Declaratory Ruling, CG Docket No. 02-278 (Apr. 21, 2021), *available at* https://ecfsapi.fcc.gov/file/10421025056258/ASSURANCE%20APRIL%202021%20NOTICE%20OF%20EX%20PARTE.pdf.

*Reiter v. Cooper*, 507 U.S. 258, 268 (1993). It "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003).

Accordingly, courts invoke the primary jurisdiction doctrine "(1) to advance regulatory uniformity, (2) to answer a question within the agency's discretion, and (3) to benefit from technical or policy considerations within the agency's expertise." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010).

> "There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."

*Bondhus v. Henry Schein, Inc.*, No. 14-22982, 2015 U.S. Dist. LEXIS 56931, at *7 (S.D. Fla. Apr. 30, 2015) (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). "The main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000). Application of the doctrine is appropriate where conduct is alleged which is "'at least arguably protected or prohibited by a regulatory statute,'" and agency resolution "'is likely to be a material aid to any judicial resolution.'" *Mendoza v. UnitedHealth Grp. Inc.*, No. 13-1553, 2014 U.S. Dist. LEXIS 1616, at *1 (N.D. Cal. Jan. 6, 2014) (staying putative TCPA class action pending FCC resolution of various petitions regarding the ATDS definition (citation omitted)).

- 6 -

Application of the doctrine to stay a case is particularly appropriate in situations where an agency's pending decision applies to the precise issue presented by the litigation before the federal court. *See Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 16-0041, 2018 U.S. Dist. LEXIS 92736, at *12 (M.D. Fla. June 1, 2018) (staying a TCPA junk fax class action because resolution of a pending FCC petition related to facsimile technology would "simplify and streamline the issues raised in this case."). Thus, the Court should exercise its broad discretion to stay this litigation pending the FCC's resolution of the Assurance Petition. As described more fully below, a stay will promote all of the aforementioned interests, is supported by proper application of the primary jurisdiction doctrine, and would constitute a sound exercise of the Court's inherent discretion to control its docket. *See Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

**1. This case requires the Court to resolve two issues currently being considered by the FCC, fulfilling the first primary jurisdiction factor.**

Adjudication of this case will require the Court to determine two issues that are presently before the Commission: (i) whether Assurance can reasonably rely on consent afforded on its website; and (ii) whether Assurance's use of a "guide" message triggers the requirements of § 227(d) and regulations implemented thereunder.

In the First Amended Complaint, Plaintiff alleges that Assurance is "strictly liable" for calls made to his number without consent, even though the calls were made with a good-faith belief that Plaintiff had, in fact, provided valid consent. Plaintiff also alleges that the TCPA's pre-recorded call rules apply to the "guide" message at issue here. Thus, to resolve Plaintiff's claims, this Court must rule on the same legal

issues currently before the FCC for consideration. The Court must determine: (i) whether Assurance could have reasonably relied on the consent provided by the allegedly anonymous individual who input Plaintiff's information on the web-form and (ii) whether the content requirements of § 227(d) and 47 C.F.R. §§ 64.1200(b)(1) and (d)(4) apply to the guided messages that Plaintiff heard at the beginning on the May 11, 2019 call. Assurance has a pending petition with the FCC to resolve these issues.

Thus, given that the FCC is considering a core issue that not only needs to be decided in this litigation, but likely is dispositive of Plaintiff's claims, the first primary jurisdiction doctrine factor weighs heavily in favor of a stay. *See, e.g.*, *Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 U.S. Corp.*, No. 16-80967, 2017 U.S. Dist. LEXIS 166033, at *5 (S.D. Fla. Oct. 6, 2017) (first primary jurisdiction factor met because "the Court will inevitably benefit from the FCC's guidance" on the central—and possibly dispositive—issue" in the litigation); *Barrera v. Comcast Holdings Corp.*, No. 14-00343, 2014 U.S. Dist. LEXIS 65800, at *7 (N.D. Cal. May 12, 2014) (granting stay and holding that first primary jurisdiction factor was satisfied because pending FCC petitions "address whether there is liability under the TCPA for the same conduct for which Plaintiff seeks to hold Defendant liable").

Because the FCC is set to decide two fundamental issues in this case – whether Assurance can reasonably rely on consent afforded on its website; and whether Assurance's use of a "guide" message triggers the requirements of § 227(d) and regulations implemented thereunder – the Court should stay the litigation until the

agency does so. Accordingly, the first primary jurisdiction factor is therefore satisfied. *See, e.g.*, *M3 U.S. Corp.*, 2017 U.S. Dist. LEXIS 166033, at *5.

> **2. The second primary jurisdiction factor is met as the two unsettled TCPA issues raised by the Assurance Petition are squarely within the FCC's jurisdiction to determine.**

The second primary jurisdiction doctrine criterion—whether the issue has been placed within the jurisdiction of the agency having authority to address it, *M3 U.S. Corp.*, 2017 U.S. Dist. LEXIS 166033, at *2—also weighs heavily in favor of a stay. There should be no dispute regarding the FCC's authority to determine the issues raised in the Assurance Petition. "Congress conferred on the FCC the authority to 'prescribe regulations to implement' the TCPA." *City Select Auto Sales Inc. v. David Randall Assocs.*, 885 F.3d 154, 159 (3d Cir. 2018); *accord ACA Int'l v. FCC*, 885 F.3d 687, 693 (D.C. Cir. 2018) ("The TCPA vests the [FCC] with responsibility to promulgate regulations" pursuant to which "the FCC has issued a series of rulemakings and declaratory rulings addressing the Act's reach."). Indeed, "it is more efficient to simply wait for the FCC to do what it has already been asked [and agreed] to do," than for this Court to proceed further with this litigation before the FCC's forthcoming ruling. *Gensel v. Performant Techs., Inc.*, No. 13-1196, 2015 U.S. Dist. LEXIS 9736, at *6 (E.D. Wis. Jan. 28, 2015) (granting motion to stay TCPA action involving Avaya calling platform pending FCC ruling on several petitions; "[t]he Court will be in a better position to proceed to judgment with definitive guidance from the FCC"). The second primary jurisdiction factor is therefore satisfied and supports a stay of this case as well.

> **3.   The third primary jurisdiction factor is present, as both the TCPA and the FCC's regulations create a comprehensive regulatory scheme that governs consent and pre-recorded voice calls to cell phones.**

The third primary jurisdiction factor focuses on whether the TCPA and the FCC's regulations create a comprehensive regulatory scheme that governs the regulation of consent and prerecorded messages transmitted to cellular telephones. This factor is present here as well. The FCC has regulatory authority that subjects the "industry to a comprehensive regulatory scheme that requires expertise or uniformity in administration." *Gusman v. Comcast Corp.*, No. 13-1049, 2014 U.S. Dist. LEXIS 69918, at *7 (S.D. Cal. May 21, 2014); *see also Comprehensive Health*, 2017 U.S. Dist. LEXIS 166033, at *6; *Bondhus*, 2015 U.S. Dist. LEXIS 56931, at *8–9.

As to "reasonable reliance," the FCC has previously noted that callers can rely "reasonably" on consent provided by third parties. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (2015 Declaratory Ruling)*, 30 FCC Rcd. 7691, 7992 (2015). While that ruling was in the context of recycled numbers, there is no reason why the same standard should not also be applied to the context of webform submissions. Permitting the FCC to rule on the issue will assure uniformity and permit the agency to maintain control over its comprehensive regulations surrounding consent.

Similarly, the term "pre-recorded voice" is not defined in the TCPA, and nothing in existing regulations identifies whether the brief, recorded message played at the beginning of the live-agent calls at issue in this case triggers the cumbersome

content requirements of 47 C.F.R. §§ 64.1200(b) and (d). Once again, this is an issue of wide impact—numerous businesses use messages akin to "This call may be recorded for quality assurance" to assure compliance—and the FCC should be afforded the space needed to make an informed, policy-driven decision that will assure uniformity across industries.

Plaintiff's counsel understands the need to permit the FCC to make the rulings in question; he has submitted lengthy materials to the Commission aimed at influencing its ruling. His counsel determined the petition to be important enough to submit a lengthy comment, attend an ex parte meeting with the FCC, and submit a substantial ex parte filing regarding the petition.[11] Numerous other stakeholders have similarly engaged with the FCC. *See id*.

Such fact-finding tools are precisely why expert agencies are empowered to interpret vague statutory language. They may invite comment, build a robust factual record, and weigh policy considerations consistent with their delegated authority from Congress in a manner that is impossible in the context of a contested litigation. Given that the FCC is in the middle of resolving this question by addressing the issues raised in the Assurance Petition, the third primary jurisdiction factor weighs in favor of staying the case until the FCC issues its rulings.

---

[11] *See* Notice of *Ex Parte* Presentation, CG Docket No. 02-278, *Petition of Assurance IQ, LLC* (Aug. 12, 2020), *available at* https://www.nclc.org/images/pdf/robocalls/FCC-letter-Ex-Parte.pdf.

### 4. The fourth primary jurisdiction doctrine is plainly met as the Court can benefit from the technical and policy considerations within the FCC's expertise.

The fourth primary jurisdiction factor focuses on whether a court can benefit from technical or policy considerations within the agency's expertise. *See, e.g.*, *Comprehensive Health*, 2017 U.S. Dist. LEXIS, at *7 ("The FCC is charged with expertise in telecommunications regulation . . . ."); *see also Pickens v. Am. Credit Acceptance, LLC*, No. 14-0201, 2014 U.S. Dist. LEXIS 131587, at *5 (S.D. Ala. Sept. 19, 2014); *Stewart v. T-Mobile USA, Inc.*, No. 14-2086, 2014 U.S. Dist. LEXIS 198466, at *7–8 (D.S.C. Oct. 8, 2014) ("It is virtually without dispute that the FCC has comparative expertise with regard to the TCPA.").

As noted above, the FCC's fact-finding powers allow it to make an informed, policy-driven determination that is entitled to deference. Moreover, although Courts routinely interpret statutory language, the FCC's special knowledge of telecommunications law—and its longstanding efforts to craft cohesive standards under the TCPA—are entitled to a special level of deference. *See Scoma*, 2018 U.S. Dist. LEXIS 92736, at *12; *see also Paetec Commc'ns v. Corecomm-Atx, Inc.*, No. 01-5298, 2002 U.S. Dist. LEXIS 18865, at *4–6 (E.D. Pa. Oct. 3, 2002). Further, the FCC is accustomed to considering these technological issues. *Charvat*, 630 F.3d at 467 ("The agency, no surprise, is familiar with the regulations *it* prescribed, and possesses expertise over the statute it implements[.]" (emphasis in original)); *Pickens*, 2014 U.S. Dist. LEXIS 131587, at *2 (FCC "has expertise in the telecommunications area due to the fact that the TCPA . . . ha[s] been entrusted to its care for interpretation and implementation.").

Comprehensive regulation by a single authority here is critical. The FCC, as the regulator with primary responsibility for interpreting the TCPA, can holistically consider the text of the statute and balance the trade-offs between a broad interpretation of the TCPA's substantive restrictions with, among other things, a safety net for callers who "reasonably rely" on consent. Courts, however, are jurisdictionally required to apply only a piecemeal approach to the same provisions—deciding only the items that are specifically before it under Article III's case or controversy requirements.

Finally, the case for agency expertise is compelling here as well. The FCC has long regulated calls to cell phones and has built a lengthy set of carefully balanced regulations as a result. *See, e.g.*, 47 C.F.R. § 64.1200(d)(1)–(4). Fine tuning these regulations requires expert craftsmanship and care. This includes determining when a snippet message becomes a pre-recorded call and what level of care is sufficient to permit a phone call on "reasonable reliance."

Thus, the cornerstone issues in this dispute, such as whether Assurance can reasonably rely on consent information provided on its website and whether the brief introductory messages played at the beginning of calls are subject to the identification requirements of 47 C.F.R. § 64.1200(d)(4), are complex, technical, and policy-driven questions within the FCC's discretion. *Charvat*, 630 F.3d at 467 ("Only the FCC can disambiguate the word[s]" in the TCPA and "all we can do is make an educated guess"). Thus, because these central issues are presently before the FCC, the Court should stay this action on primary jurisdiction grounds.

## B. The Court Also Has the Inherent Power to Issue a Stay Pending the FCC's Resolution of Assurance's FCC Petition.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord CTI-Container Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("The inherent discretionary authority of the district court to stay litigation pending the outcome of related proceeding[s] in another forum is not questioned."). "When deciding whether to grant a stay, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case; and (3) whether discovery is complete and a trial date [has] been set." *Tomco2 Equip. Co. v. Se. Agri-Sys.*, 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008).

First, Plaintiff will not be unduly prejudiced or at a tactical disadvantage by waiting until the FCC issues its interpretive ruling. Plaintiff has not alleged that he will continue to receive calls from Assurance or that he has suffered any other continuing harm. Second, a stay will simplify the issues and streamline a trial, therefore conserving judicial resources, should one be necessary. For example, a well-reasoned interpretive ruling from the FCC on the definition of a pre-recorded voice call will simplify issues for the parties and Court in both fact discovery and expert discovery because the parties will know definitively whether or not the guide scripts at issue trigger the TCPA. Third, the case is in the earliest stages. There is no reason or need for the parties, or the Court, to waste resources and time engaging in

discovery that might be entirely unnecessary or greatly reduced when the FCC issues its interpretive ruling on an issue likely to be dispositive in this case. Temporarily staying this matter will therefore promote judicial economy without causing any prejudice to Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, Assurance respectfully requests that the Court stay this matter to await the FCC's resolution to Assurance's Petition.

Respectfully submitted,

Date:  September 22, 2021

*/s/ Daniel E. Brewer*
Meredith C. Slawe
Daniel E. Brewer
**COZEN O'CONNOR**
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2000
Facsimile:  (215) 665-2013
Email: mslawe@cozen.com
Email: dbrewer@cozen.com

Eric J. Troutman (*pro hac vice*)
**SQUIRE PATTON BOGGS (US) LLP**
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581
Email: eric.troutman@squirepb.com

*Counsel for Defendant*
*Assurance IQ, LLC*