IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EVERETT SHELTON | : | CIVIL ACTION |
| | : | |
| **v.** | : | No. 21-cv-3045-JMY |
| | : | |
| LUMICO LIFE INSURANCE CO. | : | |
| and ASSURANCE IQ, LLC, | : | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO STAY

In response to the Motion to Stay (Doc. 49) filed by defendant Assurance IQ, LLC

("Assurance") and joined (Doc. 54) by defendant Lumico Life Insurance Co. (Lumico), Plaintiff

states as follows:

## I.   Introduction

Plaintiff filed this case more than two years ago, yet the case is still in its infancy.  No

scheduling conference has occurred and discovery has only just begun.[1]  Defendants now seek to

stay this action indefinitely pursuant to the primary jurisdiction doctrine pending a ruling from

the FCC on a petition that Assurance filed more than a year ago.  The Court should deny the

motion to stay for several reasons.

First, Assurance's petition raises matters of statutory interpretation, which are not the

province of the FCC; they are the province of this Court.  Accordingly, the primary jurisdiction

doctrine does not apply.

---

[1] The case was originally filed in the Southern District of New York on July 12, 2019, where it remained
pending without a scheduling conference, without discovery, and without any ruling by the court on
Defendant's proposed motions and Plaintiff's request for a scheduling conference for nearly two years
before the case was transferred to this district per the parties' stipulation. See Doc. 28, 19-cv-6494 (S.D.
N.Y.)

Second, the FCC has already rejected Assurance's arguments in prior rulings. Accordingly, Assurance's petition is a non-starter that serves little purpose other than delaying this litigation.

Third, Assurance's petition is not dispositive of this case. Regardless of how the FCC rules, this case must proceed. A stay is not appropriate in these circumstances.

Fourth, the requested stay prejudices Plaintiff, who has already waited two years for this litigation to commence. The FCC has no obligation to rule on Assurance's petition and might never do so. The requested stay is likely to result in an indefinite and unconscionable delay.

## II. Factual and Procedural Background

On May 11, 2019, Plaintiff received a telemarketing call placed by Assurance, which used a prerecorded voice to promote Lumico's insurance services. Doc. 45-1 (amended complaint) at ¶ 34. When placing the call, Assurance manipulated the caller ID to display a "spoofed" telephone number with a "local" area code that masked the caller's identity in the hopes that Plaintiff would answer the call. *Id.* at ¶¶ 36-38. When Plaintiff answered, a prerecorded voice message promoting insurance services played and concluded by asking Plaintiff to speak or press 1 to continue the call. *Id.* at ¶ 39. The prerecorded voice message did not identify the caller (Assurance) or the entity on whose behalf the call was made (Lumico). *Id.* at ¶ 40. In order to investigate the source of the call, Plaintiff followed the instruction to continue and spoke to a live representative. *Id.* at ¶ 40. During the call, Plaintiff informed the caller that he did not want the services offered and he intended to proceed with an action for them calling his cell phone number without his consent. *Id.* at ¶ 44. Despite this statement, Assurance sent Plaintiff several text messages following the call on May 12, 2019, and May 15, 2019 which continued to promote Lumico's insurance services. *Id.* at ¶¶ 45-46. These text

messages also failed to identify the caller (Assurance) and the entity on whose behalf the call was made (Lumico). *Ibid.*

At the time of Defendants' calls, Plaintiff's phone number was listed on the National Do Not Call Registry. *Id.* at ¶ 33.  Plaintiff did not consent to receive the calls. *Id.* at ¶ 49.

On July 12, 2019, Plaintiff filed the instant action, asserting claims under two separate provisions of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Doc. 1. Plaintiff alleges Defendants violated the Act's Do-Not-Call provision by failing to maintain procedures requiring the identification of the seller and the telemarketer in their telemarketing calls. Doc. 45-1 at ¶¶ 80-83 (Count One), citing 47 U.S.C. § 227(c); 47 CFR § 64.1200(d)(4).[2] Second, Plaintiff alleges Defendants violated the Act's robocall provision by placing prerecorded telemarketing calls to Plaintiff and the class without their prior express consent. *Id.* at ¶¶ 84-87 (Count Two), citing 47 U.S.C. § 227(b)(1)(A)(iii); 47 CFR § 64.1200(a)(2)-(3).

On September 12, 2019, the day before its responsive pleading was due, Assurance requested leave to file a motion to stay this case pending the FCC's ruling on already pending petitions before the FCC filed by NorthStar Alarm Services, LLC and Yodel Technologies, LLC concerning "the definition of a pre-recorded voice call." Doc. 28 at p. 3.  Plaintiff submitted a letter in opposition to Assurance's request on September 17, 2019. *Id.* at p. 5.

On May 12, 2020, Assurance filed its own petition with the FCC, asserting the same arguments concerning the definition of "pre-recorded" that were already pending before the FCC

---

[2] Assurance briefly asserts (Memorandum at p. 2) that there is no private right of action for the provisions at issue in Count One.  That assertion is incorrect, but need not be decided here. *See Sorsby v. TrueGreen Ltd. P'ship*, 2020 U.S. Dist. LEXIS 241659, *11-17 (N.D. Ill December 23, 2020) (rejecting Assurance's argument).

in the NorthStar and Yodel petitions and an additional request that the FCC interpret the prior express consent requirement for prerecorded calls. Petition at p.1.

On December 18, 2020, the FCC denied the NorthStar and Yodel petitions and confirmed the TCPA's application to the prerecorded calls at issue in this case. *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 35 FCC Rcd 14640, 14643 (December 18, 2020) ("We confirm that the TCPA applies to any telephone call to a residential telephone line initiated using an artificial or prerecorded voice message")

Given that the FCC has already denied the NorthStar and Yodel petitions, Assurance's motion does not rely on those actions as Assurance originally proposed, but instead seeks to stay this case pending a ruling on the petition that Assurance itself filed on May 12, 2020 – eight months after it first sought a stay in this case.

### III. The Primary Jurisdiction Doctrine Does not Support a Stay

Primary Jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993)). "While no fixed formula exists for applying the doctrine of primary jurisdiction," the Third Circuit has considered the following factors:

> "(1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;(2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made."

*Raritan Baykeeper v. NL Indus.*, 660 F.3d 686, 691 (3rd Cir. 2011).

In addition, "courts must balance the advantages of applying the primary jurisdiction doctrine against the potential costs resulting from complications and delay in the administrative

proceedings." *Waudby v. Verizon Wireless Servs., LLC*, 2007 U.S. Dist. LEXIS 38581, *11 (D. N.J. May 24, 2007); *see also Reiter v. Cooper*, 507 U.S. 258, 270 (1993) (referral to administrative agency under primary jurisdiction doctrine was not appropriate because, among other things, "referral of the [issue] could produce a substantial delay").   Indeed, "[p]rimary jurisdiction should be used sparingly because it can result in added expense and delay." *James v. Global Tel\*Link Corp.*, 2014 U.S. Dist. LEXIS 124708, *16 (D. N.J. September 8, 2014)

Finally, "[t]he doctrine of primary jurisdiction is not a doctrine of futility; it does not require resort to an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency." *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen v. Jewel Tea Co.*, 381 U.S. 676, 687 (1965).

### A. This Court is well Equipped to Resolve the Issues Raised

At issue in this case for Count Two is the following provision of the TCPA:

"It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with <u>the prior express consent of the called party</u>) <u>using</u> any automatic telephone dialing system <u>or an artificial or prerecorded voice</u> . . . to any telephone number assigned to . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A).

Assurance's petition asks the FCC to issue a declaratory ruling that (1) this provision incorporates a "reasonable reliance" standard such that callers need only have a "reasonable basis to believe" that they have "prior express consent of the called party" rather than actual consent (Petition at 1) and (2) that "Assurance's practice of playing a prerecorded message at the outset of live-dialed calls does not constitute a prerecorded call for TCPA purposes." Petition at 9.

The petition thus raises two questions of statutory interpretation.  First, does the statute impose strict liability for calls made without prior express consent or does it allow for a reasonable reliance standard such that a caller need only reasonably believe that they had prior express consent.  Second, does the prerecorded call provision apply only to calls that are entirely prerecorded or does it also apply to calls that are only partially prerecorded.  The Court is well equipped to answer these questions of statutory interpretation.[3]

Resolution of these issues is within conventional experience of judges and therefore do not raise primary jurisdiction doctrine concerns.  When "the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility." *Raritan Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011). As such, "primary jurisdiction does not extend to pure issues of law." *Schiller v. Tower Semiconductor, Ltd.*, 449 F.3d 286, 295 (2nd Cir. 2006) (quoting *Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d 404, 411 (7th Cir. 1998).

Legal interpretation is not the special competence of any administrative agency; it is the special competence of the courts. *See Ohio Valley Envt'l Coalition v. Coal-Mac, Inc.*, 775 F.Supp.2d 900, 919 (S.D. W. Va. 2011) ("This is not an area of fact requiring the regulatory expertise that has been delegated to the State under the CWA. This is an area of law where this Court has expertise—statutory interpretation. The Court is confident in its ability to determine

---

[3] Inexplicably, Assurance contends that its petition also asks the FCC to determine whether its calls are "subject to the identification requirements of 47 C.F.R. § 64.1200(d)(4)," which are at issue in this case in Count One. Memorandum at p. 4.  Yet Assurance's petition does no such thing – the petition makes no mention of this issue whatsoever.  The question is simply not before the FCC in any capacity.  In any event, the issue is simply another matter of statutory interpretation within the province of the Court for the same reasons explained herein.

these questions of law. Accordingly, this Court FINDS that the doctrine of primary jurisdiction is not applicable in these actions.")

Courts accordingly deny motions to stay on primary jurisdiction grounds in TCPA actions where the questions at issue, like those raised here, simply require the court to interpret the law. *See King v. Time Warner Cable*, 113 F.Supp.3d 718, 724 (S.D. N.Y. 2015) ("The meaning of the clause 'prior express consent of the called party' in a generally applicable law like the TCPA presents a question of conventional statutory interpretation requiring no technical expertise"); *Abrantes v. Northland Grp., Inc.*, 2015 U.S. Dist. LEXIS 48430, *7 (N.D. Cal. 2015) ("judges are well-suited to resolve the kinds of statutory interpretation questions at issue here."); *Frydman v. Portfolio Recovery Assocs.*, LLC, 2011 U.S. Dist. LEXIS 69502, *9 (N.D. Ill. 2011) ("The issues raised by defendant are questions of statutory interpretation which can be and frequently are resolved by courts."); *Baum v. ADT LLC*, 2018 U.S. Dist. LEXIS 180530, *14 (W.D. Pa. 2018) ("the doctrine of primary jurisdiction is not applicable here because the issue . . ., a legal question of statutory interpretation, is within the conventional experience of judges."); *Meyer v. Bebe Stores, Inc.*, 2015 U.S. Dist. LEXIS 330216, *12 (N.D. Cal. 2015) ("judges are well-suited to resolve questions of statutory interpretation.").

In this case, the questions raised require nothing more than for this court to interpret the law.  The Court "relies on traditional rules of statutory interpretation" which do not "change because an agency is involved.  Analysis of the statutory text, aided by established principles of interpretation, controls."  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014) (citations omitted).

This Court is well equipped to determine whether the statutory language imposes strict liability or permits a reasonable reliance standard.   It is equally well equipped to interpret what

the words "using . . . a prerecorded voice" means.  These questions do not pose any complex

technical or policy issues that only the FCC is equipped to consider. It is for this precise reason

that another court denied a motion to stay pending the FCC's consideration of the Yodel petition

(filed by Assurance's counsel in this case) that raised the same "prerecorded" argument

advanced here. *Braver v. Northstar Alarm Servs., LLC*, 2019 U.S. Dist. LEXIS 191746, *4

(W.D. Okla. November 5, 2019) ("Given the relative simplicity of the statutory language at issue

in this action, the court believed then, and it continues to believe now, that the issue is within the

conventional experience of judges.")

### B.  The FCC does not Have Discretion to Grant the Requested Relief

The second factor set forth in *Baykeeper* also works against a stay.  The FCC simply does

not have the authority to do what Assurance has asked it to do.  Administrative agencies cannot

rewrite statutes.  They may implement rules and regulations only to the extent they are consistent

with the plain language of the statutory text. *See Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S.

837, 842 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as

the agency, must give effect to the unambiguously expressed intent of Congress.")  Here, the

plain language of the statute precludes the relief sought in Assurance's petition.

### 1.  The Plain Language of the TCPA Precludes Adoption of the Proposed "Reasonable Basis to Believe" Rule

The plain language of the statute imposes strict liability for violations of the prerecorded

call provision.  Assurance cannot point to any statutory text that would permit its proposed

"reasonable basis to believe" rule.

The Act contains myriad provisions governing the conduct of telemarketers.  Some of

those provisions expressly require consideration of the telemarketer's knowledge, beliefs, or

intent, but, critically, the provision at issue here (§ 227(b)(1)) contains no such language. There

Case 2:21-cv-03045-JMY   Document 56   Filed 10/06/21   Page 9 of 20

is therefore no statutory authority for Assurance's proposed rule. "When Congress includes particular language in one section of a statute but omits it in another" courts must "presume that Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014).

For instance, the provision regarding caller-id spoofing states that "[i]t shall be unlawful . . . to *knowingly* transmit misleading or inaccurate caller identification information with the *intent* to defraud, cause harm, or wrongfully obtain anything of value[.]" *See* 47 U.S.C. § 227(e)(1) (emphasis added). The provision at issue here, on the other hand, makes no reference to the caller's knowledge or intent and simply provides that "it shall be unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1). Thus, it must be presumed that Congress did not intend for a caller's knowledge or intent to have any bearing on whether a violation of § 227(b)(1) is committed.

Likewise, Congress drafted the statute to expressly require consideration of the caller's knowledge and intent in (1) determining the *amount of damages* to award in civil actions brought by consumers (*i.e.*, whether violations were committed "willfully or knowingly");[4] (2) determining the *amount of damages* to award in civil actions brought by *states* (same);[5] and (3) determining whether the commission can impose a *heightened forfeiture penalties* of $10,000 in

---

[4] *See* 47 U.S.C. § 227(b)(3) (providing that court may award treble damages in actions brought for violations of § 227(b) "[i]f the court finds that the defendant *willfully or knowingly* violated this subsection or the regulations prescribed under this subsection"); *see also,* 47 U.S.C. § 227(c)(5) (same provision for actions brought for violation of § 227(c)).

[5] *See* 47 U.S.C. § 227(g)(1) (same provisions for actions brought by a state).

- 9 -

its own enforcement actions (*i.e.,* whether the violation was committed "with the intent to cause such violation").[6]  All of these provisions make a telemarketer's reasonable belief about consent relevant in assessing the amount of damages and/or penalties that can be awarded, but there are no such considerations in determining whether or not a violation occurred in the first place. Indeed, there would be little point in Congress drafting these treble damages provisions if every violation of § 227(b)(1) must already be "objectively unreasonable" in order to create liability in the first place.  *See e.g., Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (adopting "objectively unreasonable" standard as test for "willful" violations of the Fair Credit Reporting Act).

Given the plain language of the statute, "[t]he circuit courts that have considered whether intent is relevant to TCPA liability have all concluded that good faith error or mistake does not preclude a defendant's liability but is material only to the question of treble damages for willful conduct." *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 979-80 (N.D. Cal. September 4, 2019), citing *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 882 n. 3 (8th Cir. 2005); *see also N. L. v. Credit One Bank, N.A.*, 2020 U.S. App. LEXIS 17434, *14-15 (9th Cir. June 3, 2020).  Thus, "[t]he TCPA is essentially a strict liability statute . . . [and] does not require any intent for liability except when awarding treble damages." *Alea London Ltd.*, 638 F.3d at 776.  It "makes no exception for senders who mistakenly believe that recipients' permission or invitation existed. The issue of intent, or more accurately, the issues of knowledge and willfulness,

---

[6]  *See* 47 U.S.C. § 227(b)(4)(B) (imposing more stringent penalties for violations of § 227(b) committed "with the intent to cause such violation")

however, clearly are material to the question of treble damages." *Universal Underwriters Ins. Co.*, 401 F.3d at 882 n. 3.

The Commission cannot depart from the plain language of the statute. 'If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'"[7] Accordingly, Assurance's requested rule that a telemarketer need only have "a reasonable basis to believe that it has the prior express consent of the called party" must be rejected outright.

**2. The Plain Language Precludes an Exception for the "Brief" use of Prerecorded Voices**

Likewise, the clear statutory text precludes the use of a prerecorded voice in calls made without consent.  "It shall be unlawful . . . to make any call  . . . using . . . an artificial or prerecorded voice . . ." 47 U.S.C. § 227(b)(1)(A).  It is undisputed that Assurance's call to Plaintiff used a prerecorded voice. *See Petition* at p. 5.  Assurance does not and cannot point to any statutory language that would permit an agency created exception for its calls.  Indeed, the FCC already declined to adopt Assurance's proposed rule when it rejected the NorthStar and Yodel petitions. *See In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 35 FCC Rcd 14640, 14643 (December 18, 2020) ("We find that the TCPA applies to any telephone call that is initiated using an artificial or prerecorded voice message")

**C.  There is no Danger of Inconsistent Rulings – the FCC has already Rejected Assurance's Arguments**

---

[7] *National Credit Union Admin. v. First Nat. Bank & Trust Co*., 522 U.S. 479, 499–500 (1998)(quoting, *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837,  842–843 (1984)).

The third *Baykeeper* factor also instructs against a stay. There is no danger of inconsistent rulings if the Court denies the motion to stay because the FCC has already rejected Assurance's arguments.

**1.   The FCC has already rejected Assurance's prerecorded argument**

As mentioned above, the FCC rejected Assurance's prerecorded call argument when it rejected the NorthStar and Yodel petitions. *See In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 35 FCC Rcd 14640, 14643 (December 18, 2020) ("We find that the TCPA applies to any telephone call that is initiated using an artificial or prerecorded voice message"). There is no reason to believe the FCC is going to change its mind after having just addressed an identical request.

Realizing the FCC has already rejected its request, Assurance now attempts a pivot – it claims that its petition also requires the FCC to "consider whether the content requirements of § 227(d) and 47 C.F.R. §§ 64.1200(b)(1) and (d)(4) apply" to Assurance's prerecorded calls. Memo at 8. Yet Assurance's petition to the FCC does not raise these issues. The words "227(d)," "64.1200(b)(1)", or "(d)(4)" do not even appear in the petition. There is thus no reason to think that the FCC is poised to rule on them. Moreover, Plaintiff does not even assert any claims under 47 U.S.C. § 227(d) or 47 C.F.R. § 64.1200(b)(1) in his complaint. *See Doc. 45-1 Amended Complaint.* And as to 47 C.F.R. § 64.1200(d)(4), Assurance's argument is misplaced. That rule applies to all telemarketing calls and text messages and has nothing to do with whether or not a call qualifies as "prerecorded."[8]  There is thus no risk of any inconsistent ruling on issues that are neither before this court nor before the FCC.

---

[8] Plaintiff alleges that Assurance's text messages violated 47 C.F.R. § 64.1200(d)(4). Thus, even if the FCC were to somehow rule out of nowhere that § 64.1200(d)(4) doesn't apply to prerecorded messages, Plaintiff's claims would survive and there would be no reason to stay the case.

2.   **The FCC has Repeatedly Rejected Similar Applications for Good Faith Exceptions to Liability**

The Commission has also repeatedly refused to adopt broadly sweeping "good faith" exceptions like the one requested by Assurance here.  For instance, in its 2003 Order, the Commission ruled that it would 'reject proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers and proposals to create implied consent[.]"[9] In its 2004 Order, the Commission again refused to adopt a broad good faith exception that would extend to all autodialed or prerecorded telemarketing calls to wireless numbers, noting that it had already "considered and declined to adopt a similar proposal in the 2003 TCPA Order."[10]

In its 2015 Order, the Commission again rejected proposals for broadly sweeping exemptions based on "good faith errors."[11]  In doing so, it "clarif[ied] that *the caller's intent does not bear on liability*" and "ma[d]e clear that such calls are exactly the types that the TCPA is designed to stop."[12]

Contrary to Assurance's contentions, the Commission has never ruled that "prior express consent' means a "reasonable belief of prior express consent."  Although the Commission has considered a caller's "reasonable reliance" on consent as a basis for creating limited safe harbors for calls to reassigned and ported telephone numbers, courts have repeatedly held that those

---

[9] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, at ¶ 172 (2003) (2003 TCPA Order).

[10] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd 19215, 19219-20, ¶ 11 (August 25, 2004) ("2004 Order")

[11] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd 7961, 7999, ¶ 71 (June 18, 2015) ("2015 Order").

[12] *Id.* at 8003-04, ¶ 80 (emphasis added).

orders "did not sanction an affirmative defense based upon the reasonableness of the caller's belief in consent."[13]  To be sure, "if a caller's intent could defeat liability, the safe harbors would be unnecessary."[14]  Thus, the Commission has never, and indeed cannot consistent with the statute, approve a broad rule injecting an intent test into the determination of "prior express consent." There is thus no risk of any inconsistent ruling on this issue either.

### D.  Rejection of these Prior Applications Factors Against a Stay

The last *Baykeeper* factor also instructs against a stay.  As shown above, both of the issues raised in Assurance's petition were raised in prior applications to the FCC and the FCC rejected those applications. *See In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 35 FCC Rcd 14640, 14643 (December 18, 2020) ("We find that the TCPA applies to any telephone call that is initiated using an artificial or prerecorded voice message");  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd 7961, 7999, ¶ 71, 80 (June 18, 2015) ("2015 Order") (rejected proposals for broadly sweeping exemptions based on "good faith errors" and ruling that "*the caller's intent does not bear on liability*[.]")  Staying this case pending what is essentially a request for the FCC to reconsider its position does not serve the purposes of the primary jurisdiction doctrine.

### E.  A Stay Would be Futile

---

[13] *Rawlins v. Stoneberry & Mason Cos.*, 2016 U.S. Dist. LEXIS 184937, *14-15 (N.D. N.Y. September 1, 2016); *see also Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 335 (S.D.N.Y. 2019) ("the Court declines Defendants' invitation to recognize a reasonable reliance exception or defense that is inconsistent with the plain language of the statute"); *Perez v. Rash Curtis & Assocs.*, 2019 U.S. Dist. LEXIS 58639, at *13 (N.D. Cal. Apr. 4, 2019) ("defendant may not assert that it acted in good faith in calling Perez and therefore is not liable under the TCPA");

[14] *N. L.*, 2020 U.S. App. LEXIS 17434 at *15

A stay pursuant to the primary jurisdiction doctrine is improper where the case "must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency." *Jewel Tea Co.*, 381 U.S. at 687. That is the case here.  Regardless of if, when, and how the FCC ever rules on Assurance's petition, its ruling will not impact Count One of Plaintiff's amended complaint, which complains of Assurance's failure to identify itself (the telemarketer) and Lumico (the seller) in the text messages that Plaintiff received.  *See Doc. 45-1 Amended Complaint at ¶¶ 46, 81-82*

Since any conceivable FCC ruling will not be dispositive of Plaintiff's claims, the Court should decline to stay pursuant to the primary jurisdiction doctrine as courts often do under the same circumstances. *See  Grogan v. Aaron's Inc.*, 2018 U.S. Dist. LEXIS 201542, at *22-23 (N.D. Ga. Oct. 26, 2018) (since the FCC's potential rulemaking had "no bearing on the viability" of one of Plaintiff's claims, that factor "militat[es] against issuing a stay."); *Wright v. eXp Realty, LLC*, 2019 U.S. Dist. LEXIS 96516 at *6 (M.D. Fla., June 7, 2019) ("Plaintiffs have filed a three-count complaint and an FCC ruling on what constitutes an ATDS will not impact two of their claims. The existence of those two claims weighs heavily against staying the action."); *Pieterson v. Wells Fargo Bank, N.A.,* 2018 U.S. Dist. LEXIS 113125, at *11-12 (N.D. Cal. July 2, 2018) ("Staying the case when an alternative theory of liability can move forward would unduly postpone adjudication of Plaintiffs' claims. For the reasons discussed above, a stay is not warranted under the primary jurisdiction doctrine."); *Swope v. Credit Mgmt., LP*, No. 4:12CV832, 2013 U.S. Dist. LEXIS 21991, at *10-15 (E.D. Mo. Feb. 19, 2013) ("even if the primary jurisdiction doctrine should be invoked for the claims related to the automatic telephone dialing system, Plaintiffs' claims regarding the use of an artificial or prerecorded voice are appropriately before this court, regardless of the FCC's decision")

**F.  The Requested Stay will Result in an Indefinite and Unjust Delay**

Finally, the Court should deny a stay pursuant to the primary jurisdiction because any advantage of a stay is outweighed by an indefinite and unjust delay. *Waudby*, 2007 U.S. Dist. LEXIS 38581 *11.

The FCC might never rule on Assurance's petition; it is under no obligation to do so. 5 USC § 554(e).  When faced with a petition for declaratory ruling, the FCC "may choose not to issue a ruling at all." *Machonis v. Universal Survey Ctr., Inc.*, 2020 U.S. Dist. LEXIS 31330, *26 (S.D. N.Y. February 21, 2020) (denying motion to stay a TCPA case pending a FCC ruling); *see also United States Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) (noting that there is "no assurance when, or even whether, the Commission might respond" to a petition for declaratory ruling).  Against this backdrop, there is no compelling reason to stay pursuant to the primary jurisdiction doctrine. *Swift v. Bank of Am. Corp.*, 2015 U.S. Dist. LEXIS 189915, *9 (M.D. Fla. 2015) ("Staying this action indefinitely until the FCC makes a ruling on the UHS and ACA petitions would prejudice the Plaintiffs by delaying their day in court, especially since it is uncertain whether the FCC will ever rule on the petitions.").[15]

It is well recognized that "[a]gency decision making often takes a long time and the delay imposes enormous costs on individuals, society, and the legal system." *Nat'l Communs. Ass'n v. AT&T.*, 46 F.3d 220, 225 (2d Cir. 1995) (citations and quotations omitted).  In this case, Assurance's petition was filed more than a year ago.  There is little reason to expect that the FCC

---

[15] The FCC's issuance of a Public Notice requesting comments regarding Assurance's petition is required whenever the agency receives a petition for declaratory ruling, it does not indicate that the FCC is actively considering the petition, or indeed, that it will in fact rule on the petition.  47 C.F.R. § 1.2. *See also Jamison v. First Credit Servs.*, 290 F.R.D. 92, 101-102, *7-8 (N.D. Ill. 2013) (same) ("[T]he fact the FCC issued a public notice requesting comments on a petition … is simply not enough of a reason for this Court to stay this action.").

will rule on Assurance's petition, much less that it will rule any time soon.  Courts frequently decline to stay under the primary jurisdiction doctrine in these circumstances.  *See Alvarado v. Bay Area Credit Service, LLC*, 2015 U.S. Dist. LEXIS 5646, * 5 (N.D. Cal. 2015) (denying motion to stay because the petitions at issue had already been pending before the FCC for nearly two years, and "there is no indication that a decision from the FCC is coming any time soon."); *Boger v. Citrix Sys.*, 2020 U.S. Dist. LEXIS 71072, *7 (D. Md. April 22, 2020) ("Because the Court can discern no clear end point for obtaining such guidance from the FCC, it declines to stay the case under the primary jurisdiction doctrine. The FCC has been wrestling with the definition of ATDS for six years with no clear conclusion in sight. Accordingly, this Court joins other courts that have refused to stay proceedings on this ground.")

Moreover, even if the FCC were to issue the sweeping and unprecedented ruling that Assurance has requested, that ruling is virtually guaranteed to be appealed. Thus, even if the FCC rules quickly, the delay will be years long. *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1070 (D. Nev. 2019) ("this cycle of staying a case while an FCC order is pending only to have the FCC order challenged in court has played out before, demonstrating the real possibility of indefinite delay.'") (citing *Pieterson v. Wells Fargo Bank, N.A.*, 2018 U.S. Dist. LEXIS 113125 (N.D. Cal. July 2, 2018)).

Thus, "any advantage derived from the primary jurisdiction doctrine does not outweigh the potential for unnecessary delay that could result from its application to this case." *D'Amico v. Waste Mgmt. of N.Y., LLC*, 2019 U.S. Dist. LEXIS 50323, *50-51 (W.D. N.Y. March 25, 2019). Indeed, less than three months ago another federal district court refused to stay a TCPA case because of another FCC petition holding:

> "the uncertainty about *when* the FCC will issue its guidance, be it legislative or interpretive, weighs heavily against staying these proceedings. Even if the agency

acted soon and promulgated guidance that would govern the analysis in this case, the FCC 's decision could be appealed through an 'application for review' to the full Commission and then to judicial review under the Hobbs Act…Because there is "no indication of when, if ever, the [FCC ] will act," and because there is "no guarantee that [the FCC's resolution of the pending petition] would squarely address the issues raised in this litigation," there is no good basis for protracting this litigation[.]"

*Advanced Dermatology v. Fieldwork, Inc.,* No. 19 C 08012, 2021 U.S. Dist. LEXIS

135844, at *37-38 (N.D. Ill. July 21, 2021).

## IV.    A stay is Not Warranted pursuant to the Court's Inherent powers

Assurance also requests the Court to stay this action pursuant to its inherent powers to

stay proceedings.  "It is well settled that before a stay may be issued, the petitioner must

demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay

would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068,

1075-76 (3d Cir. 1983) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

Assurance has failed to satisfy that burden here.  It has not identified a single undue

burden it will unnecessarily endure were the case to proceed, much less demonstrated "a clear

case of hardship or inequity."  As shown above, regardless of how the FCC's rules on

Assurance's petition (if it does so at all), this case must still proceed.  Assurance will need to

defend the failure to identify claim (Count One) even if the FCC were to change its mind and

rule that Assurance's calls somehow don't qualify as prerecorded.  Likewise, even if the FCC

were to reverse court and adopt a "reasonable basis to believe" defense to liability, Plaintiff's

claim will still proceed.  As Assurance's own petition to the FCC acknowledges,

> "[T]he Commission is not required to adjudicate the Shelton case to resolve this Petition. Assurance is not asking it to do so. The truth of the factual assertions made by the parties—and the subjective good faith and objective reasonableness of Assurance's conduct— will be assessed and resolved by the court." Petition at 8.

Thus, the parties will need to undertake all of the same discovery in this case regardless of how the FCC addresses Assurance's proposed "reasonable basis to believe" rule. *See also Jones v. AD Astra Recovery Servs., Inc.*, No. 16-1013, 2016 U.S. Dist. LEXIS 73561, at *16 (D. Kan. June 6, 2016) (finding the "potential that Defendant could engage in greater discovery, if the case is not stayed, does not constitute a 'rare circumstance' which justifies an indefinite stay").

Meanwhile, Plaintiff, on the other hand, will be prejudiced by the additional delay of this already long delayed case, and the loss of evidence that is likely to occur as a result. *See Sanaah v. Howell*, 2009 U.S. Dist. LEXIS 35260, *2 (D. Colo. 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed."); *see also* Briscoe v. Klaus, 538 F.3d 252, 259 (3rd Cir. 2008) ("Generally, prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'")  Given that this case was filed more than two years ago and discovery has only just begun, there is a substantial risk that further delay will only exacerbate the "inevitable dimming of witnesses' memories" in this case. Assurance has presented no basis for the requested stay that justifies this risk.

### V.  Conclusion

The Court should deny Assurance's motion to stay this action.


Respectfully Submitted,


PLAINTIFF, individually and
on behalf of others similarly situated,

By:

*/s/ Timothy J. Sostrin*

Timothy J. Sostrin (Pro Hac Vice)
Keith J. Keogh (Pro Hac Vice)
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
[o] (312) 726-1092
[f] (312) 726-1093
tsostrin@keoghlaw.com
keith@keoghlaw.com

Anthony Paronich (Pro Hac Vice)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

## CERTIFICATE OF SERVICE

I, Timothy J. Sostrin, certify that on October 6, 2021, the foregoing memorandum was

served on all parties of record via ECF, addressed as follows:

Lewis S. Wiener
Eversheds Sutherland, LLP
lewiswiener@eversheds-sutherland.com

Eric J. Troutman
Squire Patton Boggs LLP
eric.troutman@squirepb.com

Meredith Slawe
Cozen O'Connor
mslawe@cozen.com

/s/Timothy J Sostrin
Timothy J. Sostrin (PHV)